WM. A. FOSTER & CO., INC. *v.* UNITED STATES

No. 6259.—Invoice dated Salford, England, January 30, 1936.
 Certified January 30, 1936.
 Entered at New York, N. Y., February 14, 1936.
 Entry No. 800509.

 (Decided on remand [Reap. Dec. 6233] February 21, 1946)

 *Siegel & Mandell* (*Sidney Mandell* of counsel) for the plaintiff.
 *Paul P. Rao*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

 OLIVER, Presiding Judge: This appeal for reappraisement of certain gage glasses exported from England on January 31, 1936, came before me for decision and was dismissed on the ground that the plaintiff had failed to make out a *prima facie* case. (Reap. Dec. 6193.)

 In the decision it was stated:

A Treasury representative's report (exhibit 2), introduced by the defendant after its motion to dismiss was taken under advisement, being the only other evidence contained in this record, is of no assistance to the plaintiff in proving a *prima facie* case.

 The decision was appealed and the appellate division reversed the judgment and remanded the case (Reap. Dec. 6233), stating:

Until it has been made clear that the trial court has considered and weighed all the evidence, whether offered by the plaintiff or by the defendant, in an effort to determine the proper dutiable value of the instant gage glasses, it is not proper for the Appellate Division to review the decision of the trial court in this case. Therefore, for the purpose of affording the trial court an opportunity of clarifying the above-quoted statement in its decision, and for such other action as it may deem proper in the premises, the decision and judgment of the trial court are reversed, and the case is remanded to the trial court for action not inconsistent with the views herein expressed. Judgment will be rendered accordingly.

 It might here be stated that in my original decision all the evidence in the case, including the Treasury representative's report above referred to (exhibit 2), was considered and weighed. However, pursuant to the remand order of the appellate division, I have again considered all of the evidence in this case.

 The affidavit (exhibit 1), offered in evidence by the plaintiff, fails to establish any price at which, at the time of exportation to the United States, such or similar merchandise was freely offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade, either for home consumption, for exportation to countries other than the United States, or for exportation to the United States.

The price list attached to exhibit 1 has no probative value. It is not dated; does not provide for the granting of any discounts; and makes no provision for any difference in price for cut ends and fused or ground ends. The affiant swears that:

Attached hereto are the price lists which are the *basis* of sales made both in the home market and for export to the United States. [Italics supplied.]

However, while the invoice herein indicates a discount of 12½ per centum as being allowed from certain prices, these prices do not agree with the price list. The record is silent as to any price at which offers or sales were made in the foreign market other than the appraised values. The Treasury representative's report (exhibit 2) shows that sales were made at discounts from undisclosed list prices. It is obvious therefore that the price list (exhibit 1), even though used as a "basis of sales," does not reflect the freely offered price.

The Treasury representative's report (exhibit 2), introduced in evidence by the defendant, contains no evidence that assists the plaintiff in supporting its contention. The report is dated August 24, 1935 (5 months prior to the date of exportation herein), and was prepared pursuant to a request dated July 16, 1935, for the cost of fused ends and an analysis of home market sales to determine the usual discount allowed.

The representative called on the manufacturer on August 20, 1935. He reports that at that time this importer had been quoted a price of 3d. per dozen for fusing the ends, but the manufacturer had no figures available to show his exact cost of fusing. The materiality of the manufacturer's *exact cost* of fusing is not apparent. The only question before me is the freely offered for sale prices of gage glasses. The report shows that at the time of this investigation the only concession in price for cut ends instead of fused ends on sales in the home market was indicated by a greater discount, and that at that time the investigator found no instance of a definite deduction of 3d. per dozen as an allowance for the difference between cut and fused ends. Whether or not the manufacturer sold or offered these gage glasses in the same manner at the time of exportation herein is left unanswered.

The representative then reports an analysis of all home market sales of gage glasses made during the months of January, February, and March 1935. This period, being 10 to 12 months prior to the shipments before us, is too remote to be of any probative value. As reported, his analysis was confined to information from which "the usual discount allowed" could be determined. The record is silent as to whether or not an analysis of sales for the period of January, February, and March *1935*, would be representative to the extent of establishing the "usual discount allowed" on or about January *1936*, the date of this exportation.

As this record fails to establish any values to overcome the presumptively correct values found by the appraiser, the appeal is therefore dismissed.

Judgment will be entered accordingly.